September 21, 1992

CLERK OF COURT
SUPREME COURT. CNMI
FILED

92 SEP 21 A 8: 04

BY: _____

# IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF: ) ) FRANCISCO C. DELEON GUERRERO, ) Deceased. ) _____ ) | APPEAL NO. 91-014 CIVIL ACTION NO. 87-294 OPINION |

Argued and Submitted February 21, 1992

Counsel for Appellant: Douglas Cushnie
 P.O. Box 949
 Saipan, MP 96950

Counsel for Appellee: Kenneth L. Govendo
 P.O. Box 2377
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ, Associate Justice
 and HILLBLOM, Special Judge.

VILLAGOMEZ, Justice:

Diana DLG. Villagomez, the administratrix of the estate of Francisco C. Deleon Guerrero ("Guerrero"), deceased, appeals a decision of the Superior Court concluding that Guerrero fathered Ricardo Camacho ("Ricardo"), and that Ricardo is therefore entitled to share in Guerrero's estate. The trial court found that Ricardo "met his burden of proof by proving that he is the son of Francisco

255

C. Deleon Guerrero by clear and convincing evidence." Findings of Fact and Conclusions of Law, Re: Heirship Claim, at 2.

The administratrix seeks reversal of the heirship ruling on five grounds:

1. The Uniform Parentage Act ("UPA") bars Ricardo's parentage claim because (a) Ricardo is, under the law, presumed to be a child of Francisco S. Duenas, and (b) Ricardo's assertion that Guerrero is his natural father is barred by the UPA statute of limitation.

2. Ricardo failed to establish Guerrero's paternity by clear and convincing evidence.

3. The UPA requires the filing of an action, separate from the probate proceeding, in order to establish paternity.

4. The equitable doctrines of laches and estoppel bar Ricardo's heirship claim.

5. The trial court prejudicially erred in admitting: (a) the testimony of Ricardo's mother, Monica Duenas, which testimony in effect bastardized Ricardo, and (b) the hearsay testimony of Monica, Emerienciana Reyes, and Ricardo as to statements allegedly made by Guerrero.

# I.

## THE FACTS

Guerrero passed away intestate on April 22, 1987. He had three children from a first marriage to Mariana Camacho Deleon Guerrero and two children from a second marriage to Ok Soon Sa Guerrero. He also fathered a son, out of wedlock, with Monica C. Duenas, named David Camacho, born July 16, 1952.

Monica C. Duenas ("Monica") was married to Lino Blanco, who died in 1942. She subsequently married Francisco S. Duenas, a merchant sailor, and they had a child named Cecilia C. Duenas, who was born January 1, 1948. Ten months after Cecilia's birth, Duenas left Saipan on a merchant ship. He never returned.

After David's birth in July, 1952, Monica gave birth to a child named Margarita on August 6, 1953. The father was a person whom Monica referred to as a "Mexican." On December 29, 1954, Monica gave birth to Ricardo. Monica testified at the heirship hearing that Ricardo is the natural son of Guerrero.

After Guerrero passed away, his daughter, Diana, was appointed administratrix of his estate. Ricardo filed a claim with the estate, asserting that Guerrero was his natural father and was entitled to share in his estate. The administratrix rejected the claim, denying that Ricardo is a natural son of Guerrero.

After the hearing to determine whether Ricardo is an heir of Guerrero, the trial court found that during the period when Ricardo was conceived, Monica had sexual relations solely with Guerrero. It concluded that Ricardo was thus the natural son of Guerrero and

is his heir.

## II.

## THE LAW

The Northern Mariana Islands Probate Law ("Probate Code") which governs intestacy proceedings, became effective on February 15, 1984. 8 CMC §§ 2101-2102. Section 2202(a) thereof provides:

> [T]he Commonwealth [Superior] Court shall have jurisdiction over all subject matter relating to estates of decedents, including construction of wills and determination of heirs and successors of decedents.

(Emphasis added.)

Section 2107(o) of the Probate Code defines "heirs" to mean "those persons who are entitled under the chapter on intestate succession to the property of a decedent." Section 2107(bb) defines "successors" to mean "those persons, other than creditors, who are entitled to property of a decedent under a decedent's will or under this law."

Section 2118 next provides that:

> If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession . . . (b) a person born out of wedlock is the child . . . of the father, if . . . (2) the paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof . . . .

About a year after enactment of the Probate Code, on April 1, 1985, our "Uniform Parentage Act" (the "UPA") was enacted. 8 CMC § 1700, et seq. The provisions of the UPA pertinent to the issues before us are as follows:

Section 1708(a). Without limiting the jurisdiction of

258

any other court,[1] the Commonwealth [Superior] Court has jurisdiction of an action brought under this chapter. The action may be joined with an action for divorce, annulment, separate maintenance, or support.[2]

Section 1712. Evidence relating to paternity may include: (a) evidence of sexual intercourse between the mother and alleged father at any possible time of conception[.]

Section 1714. (a) . . . The mother of the child . . . [is] competent to testify and may be compelled to testify.

Section 1715. (b) If the judgment or order of the court is at variance with the child's birth certificate, the court shall order that a new birth certificate be issued under section 1723.

## III.

## ANALYSIS

### A. The Applicability of the UPA to Ricardo's Heirship Claim.[3]

The administratrix contends that the UPA is the exclusive statutory vehicle through which Ricardo may establish Guerrero's paternity. She asserts that paternity claims cannot be determined in probate proceedings. She argues that Ricardo should not be allowed to bring a paternity claim in a probate proceeding because all paternity claims are exclusively governed by the UPA, which has

---

[1] We interpret "any other court" to include a family court, juvenile court, probate court, and so forth.

[2] This section does not permit joinder of a UPA paternity action with a probate proceeding. The reason for this is because UPA actions may be brought only while the alleged or presumed father is alive and could be made a party or given notice thereof. A thorough review of all the sections would indicate that the UPA contemplates the bringing of an action while the presumed or alleged father is alive and could be made a party to or given notice of the action. Although a UPA case may be joined with a divorce or support case where the father is alive, it could not be joined with a probate case because the father is deceased.

[3] Whether the UPA applies to this particular case which involves an heirship determination calls for statutory construction and is reviewable de novo. In re Estate of Aldan, No. 90-045 (N.M.I. Oct. 3, 1991).

detailed procedure for determining such claims.[4]

We now hold, after reviewing both the UPA and the Probate Code, that heirship claims may be entertained as part of a probate proceeding and are not necessarily excluded by the UPA, a law enacted after the Probate Code. Our Probate Code expressly allows an heirship proceeding to determine the legal heirs or successors of a decedent. 8 CMC § 2202(a).

The Probate Code expressly permits the trial court to determine "for purposes of intestate succession" whether one is an heir either through an adjudication made before the death of the father or an adjudication rendered after his death. We agree that an action to establish paternity before the father's death, beginning with the enactment of the UPA, should be governed by the UPA. Establishing paternity after an alleged father's death, however, could not be undertaken through the UPA because the UPA contemplates that the alleged father is still alive, will be made a party to the action or given notice of the action.[5] Because that cannot be done after the alleged father's death, the UPA clearly cannot be the vehicle to establish paternity after the father's death. The Probate Code, on the other hand, expressly permits the determination of a decedent's heirs in a probate proceeding. In order to determine who is an heir, one's parental lineage must

---

[4] The administratrix also argues that to allow Ricardo to establish paternity in a probate proceeding would result in the application of two inconsistent procedures -- one under the UPA and the other under the probate procedures. We fail to see how this makes any significant difference.

[5] Section 1709 of the UPA requires that "[T]he natural mother, each man presumed to be the father under section 1704, and each man alleged to be the natural father, shall be made parties or, if not subject to the jurisdiction of the court, shall be given notice of the action in a manner prescribed by the court and an opportunity to be heard." (Emphasis added.) Obviously, this cannot be accomplished where the father is dead.

260

first be established. Such necessarily includes a parental determination.

The administratrix next contends that, under the UPA, Ricardo is presumed to be a child of Francisco S. Duenas ("Duenas") who was Monica's legal husband and was never formally declared dead after his 1948 departure from Saipan. She argues that, before Ricardo is permitted to establish Guerrero's paternity, he must first establish under the UPA that Duenas is not his father. She asserts that both the period within which Ricardo may file an action to declare that Duenas is not his father and the period for filing an action to declare that Guerrero is his father have run under the UPA.

Even if we assume that the UPA is the exclusive vehicle to prove paternity, appellant's argument as to this issue is unpersuasive. The record establishes that it was factually impossible for Duenas to have fathered Ricardo in 1954 since he was not heard from or seen since 1948 when he left Saipan. Ricardo was born slightly over six years after Duenas left Saipan and has never returned. It is true that the common law requires at least a seven-year absence before one is presumed dead.[6] However, the common law presumption of Duenas' death is not the exclusive determinative factor of the presumption of his paternity. The presumption that Duenas is the father has been clearly rebutted by the evidence that for at least six years before Ricardo was born,

---

[6] In the CNMI, this rule has been changed by statute to five years. 8 CMC § 2106(d).

and to this day, Duenas was never on Saipan. [7]

We find it strange for the administratrix to concede that Duenas is not the father of David, whom Monica also gave birth to four years after Duenas' departure from Saipan, but that Ricardo who was born six years after Duenas' departure is Duenas' son. Either both are presumed to be Duenas' children or neither is. The record below supports the trial ruling that the presumption of Duenas' paternity has been rebutted, and that neither of the two is Duenas' child, particularly because of the undisputed absence of Duenas since 1948.

We have explained above the main reason why the UPA does not bar Ricardo from asserting in a probate proceeding that he is an heir of Guerrero. A second reason for so holding is our opinion that to hold that the UPA is the exclusive method for filing paternity actions would adversely affect Ricardo's right to due process of law because (a) he was already 31 years of age when the UPA was enacted and (b) the UPA limits the filing of paternity actions once a child has reached the age of 21.

We have previously ruled that the UPA applies prospectively. In re Estate of Aldan, supra. To apply the UPA retrospectively would effectively bar heirship claims, like Ricardo's, who have passed the age of 21. In Ricardo's case, applying the UPA would work a deprivation of a property right.

Finally, we disagree with the contention that the general

---

[7] Since the UPA does not apply in this case, the limitation of time to rebut such presumption also does not apply.

262

limitation period, 7 CMC § 2504, bars Ricardo's claim. Such limitation period began to run when Ricardo's claim against the estate accrued, that is, when the administratrix was appointed. Ricardo's claim was timely filed within the required two-year period.

## B. The "Weight" of the Evidence.

In approaching the issue[8] of the weight of evidence, appellant compares the evidence presented by Ricardo with the opposing evidence. She then argues that the evidence against Guerrero's paternity is more credible and is stronger than the evidence in favor of paternity.

Unless we are convinced, after reviewing the trial record, that a mistake was clearly committed below, we will not disturb a trial court's factual findings, or reweigh the evidence below. Such is not an appellate function. In Re Estate of Rofag, No. 89-019 (N.M.I. Feb. 22, 1991). We have independently reviewed the record below, including the transcript of the proceedings, and are satisfied that the trial court's findings are supported by clear and convincing evidence.

## C. Filing of Independent Action Under the UPA.

Appellant contends that an independent paternity action should be brought by Ricardo, separate and apart from the probate

---

[8] This is a question of fact which we review under the clearly erroneous standard. Pangelinan v. Unknown Heirs of Mangarero, No. 90-015 (N.M.I. Nov. 1, 1990).

proceeding.[9] She reiterates her previous argument that such is the only procedure for establishing paternity, as contemplated by the UPA. She asserts that since our Probate Code does not expressly provide for a similar procedure, a separate paternity action could only be brought under the UPA. For the reasons we earlier noted, the UPA does not apply to this case. This argument thus has no merit.[10]

### D. Laches and Estoppel.[11]

Appellant asserts that Ricardo (1) has known since he was a child that Guerrero was allegedly his father and (2) was aware of this when the UPA became effective in 1985, while Guerrero was still alive. She asserts that Ricardo knowingly failed to diligently act to establish that Guerrero was his natural father. She argues that Ricardo intentionally waited until Guerrero had died to file his parentage claim. As a result of his failure to act, significant evidence has dissipated -- such as Guerrero's testimony, blood test results, and so forth. Appellant further argues that Guerrero's other heirs will now receive less from the estate, unless we find his claim barred by laches and estoppel. This argument has no merit.

---

[9] This is a question of law which we review de novo. In re Estate of Aldan, supra.

[10] The UPA does not state that it provides the exclusive means by which a paternity action may be instituted. Nor does it nullify a probate court's power to determine heirship. To the contrary, the UPA provides that it does not limit the "jurisdiction of other courts." 8 CMC § 1708(a).

[11] This issue presents a mixed question of law and fact which we review de novo. Trinity Ventures, Inc. v. Guerrero, No. 89-001 (N.M.I. Jan. 12, 1990).

First, appellant's assertions raise questions of fact which were not adjudicated below. For instance, whether Ricardo intended to wait for Guerrero to pass away before filing a paternity claim. Second, the trial court did not rule on the factual or legal issues related to laches and estoppel and therefore are not ripe for our review. Third, Ricardo's claim is more accurately described as an heirship claim under probate proceedings rather than a paternity claim under the UPA. Since the heirship claim was filed promptly, no damage to the estate or the other claimants or heirs has resulted. Fourth, the sharing of an estate with other legal heirs does not constitute "damages." It is the natural and legal consequence of descent and distribution of a decedent's estate. And finally, appellant has not shown (under the principle of estoppel) how they have relied upon Ricardo's delay, in filing his heirship claim, to their detriment.

## E. The Testimony as to Bastardization.[12]

Appellant contends that Monica's testimony that Guerrero is Ricardo's father violates the parol evidence rule because her testimony contradicts Ricardo's birth certificate which states that the father is "unknown." She also asserts that the testimony violates the common law Mansfield Rule which disfavors testimony that would bastardize a person. Both contentions have no merit.

We note that the UPA, although not applicable to this case,

---

[12] The two issues raised in this part involve the propriety of admitting certain evidence which we review under the abuse of discretion standard. In re Estate of Mueilemar, No. 90-020 (N.M.I. Nov. 29, 1990).

265

modified the Mansfield Rule and recognizes that the natural father of a child, under certain circumstances, may be different from the husband of the child's mother or what is stated (or not stated) in the child's birth certificate. Testimony that one is born out of wedlock (i.e. a bastard) is usually the basis of a parentage action. If so proven, the court orders that a new birth certificate be issued. 8 CMC § 1715(b). The same rationale applies in heirship proceedings where paternity is at issue. Testimony that a child is born out of wedlock is not only permissible but necessary. 8 CMC § 1712.

The very nature of an heirship proceeding is to determine one's parents or parental lineage. Ricardo admits that he is a bastard. His certificate of birth states that the father is unknown. The purpose of Monica's testimony is to determine who is Ricardo's natural father, since the presumption that Duenas is his father has been rebutted. We hold that the court did not abuse its discretion in allowing testimony which proves that Ricardo is an illegitimate child, born out of wedlock.

F. The Hearsay Testimony of Monica, Emerienciana Reyes and Ricardo.[13]

The administratrix challenges the admission of the hearsay testimonies of Monica, Emerienciana Reyes, and Ricardo. The hearsay testimonies consist of statements made by Guerrero

---

[13] This is an issue involving the admission of hearsay testimony which we review under the abuse of discretion standard. Guerrero v. Guerrero, No. 90-018 (N.M.I. Mar. 14, 1991).

admitting that he was the natural father of Ricardo. She contends that the hearsay testimonies do not fall within any of the hearsay exceptions and should not have been admitted. We find this argument to have no merit for two reasons.

First, the hearsay testimonies of the three witnesses were being offered against the declarant and his estate. The purpose of the offer was to prove Ricardo's birth, illegitimacy, relationship by blood, and ancestry, all of which relate to both Ricardo and Guerrero's personal and family history, and which are admissible under the hearsay exception rules, Rule 804(b)(3)[14] and 804(b)(4)(B),[15] Commonwealth Rules of Evidence.

Second, even if the hearsay testimonies of Monica,[16]

---

[14] Rule 804. Hearsay Exceptions; Declarant Unavailable.

. . . .

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . .

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

[15] Rule 804. Hearsay Exceptions; Declarant Unavailable.

. . . .

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . .

(4) Statement of personal or family history. . . .

(B) a statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.

[16] Only the hearsay testimony of Monica is the subject here. The rest of her testimony were admissible and were heavily relied upon by the court below.

267

Emerienciana, and Ricardo were excluded, we have reviewed the record and find that the remaining evidence is sufficient to sustain the findings of the trial court. Therefore, even if error was committed, it was harmless. See, Pangelinan v. Unknown Heirs of Rita Mangarero, No. 90-015, 1 N.Mar.I. 141 (N.M.I. Nov. 1, 1990); In re Estate of Barcinas, No. 90-24/30 (N.M.I. Jan. 30, 1992).

For the above reasons, we AFFIRM the decision of the trial court.

Dated this 21st day of September, 1992.

JOSE S. DELA CRUZ, Chief Justice

RAMON G. VILLAGOMEZ, Associate Justice

LARRY L. HILLBLOM, Special Judge